## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JOHN A. THOMAS (#177753)                           CIVIL ACTION

VERSUS

WARDEN BURL CAIN, ET AL.                           NO. 05-0941-D-M2

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, January 31, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

JOHN A. THOMAS (#177753)                                          CIVIL ACTION

VERSUS

WARDEN BURL CAIN, ET AL.                                          NO. 05-0941-D-M2

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

This matter comes before the Court on the defendants' Motions to Dismiss.  Rec.doc.nos. 53 and 69.  These motions are opposed.

The pro se plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, instituted this action pursuant to 42 U.S.C. § 1983 against Warden Burl Cain, Warden Donald Barr, Warden Doug Durrette, Major Ronnie Constance, Dr. Mai Tran, Dr. Charles Barkmeyer, Nurse Vona, Sgt. Todd Moreau, Nurse Farrow, Nurse Chuck, Major Myers, Capt. Presley Bordelon, Capt. Lonnie Edmonds, Lt. Eric Hinyard, Lt. Skiels, Sgt. Mullard, Lt. Reginald Smith, Akisha Lewis, Sgt. Ernest, Dennis Kimble and Classification Officer Williams, contending that the defendants violated his constitutional rights through deliberate indifference to his serious medical needs in September, 2004.  At that time, he was allegedly administered an incorrect medication which caused him injury.  Further, the plaintiff asserts that he was thereafter subjected to deliberate indifference to his serious medical needs and unconstitutional conditions of confinement.  Finally, he complains that he was subjected to harassment in the form of threats and verbal abuse, mishandling of his personal, legal and religious property, and false and retaliatory disciplinary reports.[1]

---

[1]      Attempts by the United States Marshal's Office to serve defendants Dr. John Doe, Nurse Vona, Nurse Chuck, Nurse Farrow, Major Myers, Lt. Skiels, Akisha Lewis, Sgt. Ernest and Officer Williams have proven unsuccessful because the Louisiana Department of Public Safety and Corrections has refused to accept

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure may not be granted unless it appears certain that the plaintiff will be unable to prove any set of facts in support of his claim that would entitle him to relief.  <u>Leffall v. Dallas Indep. Sch. Dist.</u>, 28 F.3d 521, 524 (5th Cir. 1994), <u>citing</u> <u>Norman v. Apache Corp.</u>, 19 F.3d 1017, 1021 (5th Cir. 1994).  <u>See also</u> <u>Green v. State Bar of Texas</u>, 27 F.3d 1083, 1086 (5th Cir. 1994) ("A dismissal will not be affirmed if the allegations support relief on any possible theory").  Accordingly, this Court must accept all well-pleaded facts as true, and must review them in the light most favorable to the plaintiff.  <u>Green</u>, <u>supra</u>, at 1086.

Initially, it is unclear from the allegations of the plaintiff's Complaint whether he has named the defendants herein in their individual and/or their official capacities.  However, in light of the liberality with which this Court views the pleadings of pro se petitioners, <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court interprets the plaintiff's Complaint as naming the defendants in both capacities.  Notwithstanding, the law is clear that § 1983 does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  Neither a State, nor its officials acting in their official capacities, are "persons" under § 1983.  <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  Thus, it is clear that the plaintiff

---

service on behalf of these individuals.  Accordingly, these defendants have not appeared in this proceeding and have not participated in the instant motions. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings.  It is appropriate, therefore, that the plaintiff's claims against defendants Dr. John Doe, Nurse Vona, Nurse Chuck, Nurse Farrow, Major Myers, Lt. Skiels, Akisha Lewis, Sgt. Ernest and Officer Williams be dismissed, without prejudice.

fails to state a claim under § 1983 against the defendants in their official capacities.

Turning to the plaintiff's allegations against the defendants in their individual capacities, he alleges in his long and rambling Complaint that he was transferred to LSP in September, 2004, at which time he was only superficially examined by defendant Dr. Mai Tran, with defendant Major Constance and another officer, Lt. Milam (not named as a defendant herein) allegedly present. According to the plaintiff, the defendant physician was skeptical regarding the plaintiff's asserted need for a wheelchair and regarding some of his other medical complaints. Nonetheless, the plaintiff was apparently referred for examination by a specialist, defendant Dr. Barkmeyer, which examination initially took place in February, 2005, after which defendant Dr. Barkmeyer referred the plaintiff for diagnostic testing at both Earl K. Long Hospital in Baton Rouge, Louisiana, and at Charity Hospital in New Orleans, Louisiana. These examinations, together with associated diagnostic testing, took place in May and June, 2005. The plaintiff complains, however, that defendant Dr. Barkmeyer has generally been of little assistance in responding to the plaintiff's medical complaints.

The plaintiff also complains of a specific incident of alleged wrongdoing at LSP, which occurred on September 9, 2004, shortly after his arrival at LSP, on which date he asserts that defendant Nurse Moreau improperly gave him a medication ("morphine") which was not prescribed for him. After the plaintiff complained of adverse symptoms relative to the medication, he was initially told by attending nurses that the medication had been prescribed by a physician. When the plaintiff continued to complain of symptoms from the medication, he was given an

3

injection of a second medication ("Norcan") by defendant Nurse Vona, reportedly to counteract the effects of the initial dosage. The plaintiff complains, however, that the nurses thereafter continued to mislead him as to whether the "morphine" had been prescribed for him or whether it had been mistakenly given to him. He further complains that he was provided with no further medical treatment or attention relative to the improper medication other than the single injection of "Norcan". As a result, he developed a "great deep embedded fear" of seeking medical attention at LSP. In addition, he asserts that the defendant nurses ultimately fabricated a false disciplinary report against him, accusing him of having obtained the improper medication by having answered for another inmate when the medication was being distributed.

It further appears from the plaintiff's allegations that, on November 4, 2004, he was transferred from one LSP hospital ward to another, where he complains that conditions were more onerous. Specifically, he asserts that in the newly assigned housing unit, conditions were unsanitary, food was improperly prepared and/or cold, his mail was tampered with, the thick doors behind which he was confined presented a dangerous condition, he was not provided with accommodation for showering in a wheelchair, the climate controls were utilized by security officers to expose him to uncomfortably hot or cold temperatures, and he was denied an opportunity for exercise. However, notwithstanding his conclusory assertions regarding these conditions and his conclusory assertions that his transfer was motivated in retaliation for his complaints regarding the alleged misapplication of "morphine", he concedes that his medical records will show that, as a result of symptoms exhibited by him at that time, the medical staff suspected that

4

he was suffering with active tuberculosis or some other infectious disease.  As a result, he concedes that the records will reflect that he was transferred in major part so that he could be housed in a negaive-pressure cell and isolated so as not to infect other inmates and prison personnel.  Further, the plaintiff fails to identify any defendant who was involved in his transfer to the allegedly more onerous hospital ward or in his treatment while housed at that location.

In addition to the foregoing, the plaintiff complains of events commencing on January 27, 2005, on which date he was allegedly placed in a "strip cell" for an unspecified reason, and that, while so confined, his legal, personal, medical, and religious property was taken from him and not returned until approximately two (2) weeks later, on February 8, 2005.  In addition, the plaintiff complains that, during this interval, defendant Constance "took the support feet off of my wheelchair", that defendants Hinyard and Constance subjected him to threats and verbal abuse, and that when his property was returned, some of it had been lost, mishandled or discarded.

Finally, the plaintiff complains that in early 2005, he was transferred to the prison's general population.  At the time of the transfer, he was told that he had been labeled as a "rat" and as a complainer.  Moreover, in the first few weeks after the transfer, he was allegedly subjected to unspecified verbal and physical harassment by defendants Kimble and Smith.  Although the plaintiff complained to prison supervisors of this misconduct, very little was done in response, and the plaintiff was ultimately charged with a false disciplinary report by defendant Kimble, which report was later withdrawn.  The plaintiff also complains that while in the general population, he was required to live

5

in proximity to and share unsanitary toilet facilities with inmates who suffered with communicable diseases.  In addition, the plaintiff complains that he was deprived of unspecified medical supplies and, at the instruction of an LSP physician, Dr. Tarver (not named as a defendant herein), he was provided with self-catheterization equipment which he believed to be inadequate and which he believed to pose a risk of infection or injury.  He does not allege, however, that he has in fact suffered any injury or harm as a result of this self-catheterization equipment.  Finally, he complains that he was issued a retaliatory disciplinary report by defendant Smith in June, 2005, and that he was not provided with appropriate due process at his subsequent disciplinary hearing, resulting in his being sentenced to extended lockdown.

Turning first to the plaintiff's claims against defendants Burl Cain, Doug Durrette and Donald Barr, although the plaintiff has named these individuals as defendants in this proceeding, he has failed to include any factual allegations of direct personal involvement by these individuals in the conduct of which he complains.  To be liable under § 1983, a person must either be personally involved in conduct causing the alleged deprivation of constitutional rights, or there must be a causal connection between the conduct of that person and the constitutional violation sought to be redressed.  Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983).  Any allegation that the named defendants are responsible for the actions of their subordinates or co-employees is alone insufficient to state a claim under § 1983.  Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the

deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law.  Lozano v. Smith, supra. In the instant case, the plaintiff has made no allegation of direct personal participation by defendants Cain, Durrette and Barr in the events alleged, or of the existence of a clearly apparent wrongful policy, or of the breach of an affirmative duty imposed by state law.[2] Accordingly, the plaintiff has failed to state a cause of action against defendants Cain, Durrette and Barr, and these defendants are therefore entitled to dismissal from this proceeding.

Turning to the plaintiff's claims asserted against the remaining defendants, the record reflects that the defendants have asserted the defense of qualified immunity in connection with these claims. Specifically, the defendants assert that the plaintiff has failed to allege conduct on their part which rises to the level of a constitutional violation.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  Hale v. Townley, 45 F.3d 914 (5th Cir. 1995).  As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the

---

[2]   The most which the plaintiff may be interpreted to allege is that he made complaints to these three defendants of the conduct of other security officers.   The plaintiff, however, is not constitutionally entitled to a favorable response to his complaints regarding the conduct of other prison personnel.  Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005).

defendants' conduct violated the plaintiff's constitutional rights. Second, the district court must determine whether the rights allegedly violated were clearly established. This inquiry, the Court stated, must be undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful <u>in the situation which he confronted</u>. <u>Id.</u> In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because she has failed to allege facts in the Complaint which support a finding that the defendants violated the plaintiff's constitutional rights.

Undertaking the <u>Saucier</u> analysis, the Court concludes that, with one exception hereafter discussed, the defendants' motions are well-taken and that the plaintiff's allegations fail to overcome the assertion of qualified immunity.

Initially, the plaintiff asserts a claim that the defendants have been deliberately indifferent to his serious medical condition commencing with his arrival at LSP in September, 2004. In this regard, in order for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care was denied and that the denial constituted "deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); <u>Johnson v. Treen</u>, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation which he believes he should have is not the issue. <u>Estelle v. Gamble</u>, <u>supra</u>; <u>Woodall v.</u>

Foti, 648 F.2d 268 (5th Cir. 1981).  Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.  Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra.  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.  Farmer v. Brennan, supra.  As stated in Farmer, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

Applying this standard to the plaintiff's allegations of fact, it appears that although he has not been satisfied with the medical care which he has received since his arrival at LSP in September, 2004, his complaints have nonetheless been attended to and, ultimately, have not been ignored.  Specifically, it appears clear from his allegations and from his admissions in the record that he was initially examined upon arrival at LSP, and although his entitlement to a wheelchair was questioned, he apparently was allowed to keep his wheelchair for some period of time.  In addition, in light of his complaints, he was initially assigned to an LSP hospital ward and, upon it appearing that he may be suffering with tuberculosis or another contagious disease, he was given diagnostic x-rays, antibiotics, and placed in a negative-pressure cell.  He was apparently discharged from the hospital ward in late 2004 or early 2005, within several months of his arrival at LSP, and was thereafter transferred to the general prison population.  By his own admission, he has since been provided with materials deemed appropriate by LSP physicians for him to perform self-catheterization, albeit not the materials which he believes to be appropriate.  In addition, he

9

acknowledges that he has been seen by LSP physicians in response to his many complaints, including referrals to be examined by a specialist, which led to diagnostic testing performed at both Charity Hospital in New Orleans and at Earl K. Long Hospital in Baton, Rouge, Louisiana.  He does not state in what manner, if at all, he has been harmed by the defendant's actions or in what manner his condition has deteriorated or been made worse as a result thereof.   In short, the Court does not believe that the plaintiff has adequately set forth allegations of the violation of his constitutional rights regarding his medical care.

Moreover, specifically addressing certain of the plaintiff's many generalized complaints regarding his medical care, these specific complaints do not rise to the level of constitutional violations.  For example, the plaintiff complains in great detail, throughout his Complaint, regarding the mis-application of "morphine" on one occasion in September, 2004, by defendant Nurses Vona and Moreau.  However, the plaintiff makes no assertion whatever that this was done for the purpose of causing him harm, and he acknowledges that corrective medication was given to him as soon as the mistake was discovered.  Accordingly, it appears clear that this conduct by the defendant nurses, whether done in error as the plaintiff contends or done in response to the plaintiff's responding for another inmate as the defendant nurses apparently contended, amounts to nothing more than mere negligence or, at most, malpractice which is not actionable under § 1983.  <u>Oliver v. Collins</u>, 904 F.2d 278 (5th Cir. 1990); <u>Thompkins v. Belt</u>, 828 F.2d 298 (5th Cir. 1987).

The plaintiff also complains of the failure to provide him with appropriate equipment for self-catheterization.  He has acknowledged,

however, that he has been provided with self-catheterization equipment, a bag in which to store the equipment, instructions for its care, use and cleaning, and lubrication to facilitate its use.  Although the plaintiff asserts, in conclusory fashion, without supporting authority or reference, that he needs "sterile gloves, solution, betedine prep swabs and A&D/or antibiotic ointment", he does not dispute that medical personnel at the prison have informed him that these materials are not medically necessary and have informed him that they have provided him with adequate provisions for self-catheterization.  Based upon these admissions, together with the fact that the physician who allegedly prescribed the self-catheterization equipment (Dr. Tarver) is not named as a defendant herein, the fact that plaintiff is unquestionably not entitled to a change in his medical supplies merely because he believes the change to be appropriate, and the absence of any assertion that the plaintiff has sustained harm or injury in fact as a result of the equipment provided, the Court is unable to find that the plaintiff has alleged a constitutional claim of deliberate indifference to his serious medical needs in this regard.

     In short, it appears clear that none of the defendants, by their actions or inaction, are alleged to have behaved with an intent to cause the plaintiff harm or with explicit knowledge that serious harm was substantially certain to follow from their actions.  Moreover, the plaintiff does not allege that the defendants have taken any action intentionally adverse to his medical condition or have had the requisite culpable intent to cause him harm, which intent is a requirement for a claim of deliberate medical indifference.  Accordingly, in the Court's view, the plaintiff fails to state a claim of deliberate medical

indifference against the defendants, and the motions to dismiss should be granted in connection with this claim.

The plaintiff also complains of the conditions of confinement to which he has been subjected in various areas within the prison where he has been housed.  Specifically, he complains that he was initially assigned to Hospital Ward Two upon arrival at the prison, but was later transferred to a cell in Hospital Ward One which he contends was more onerous.  Specifically, while housed at the latter location, his mail was tampered with, the conditions were unsanitary, the food was unhygienically prepared and/or was served cold (resulting in his alleged unilateral refusal to eat for a month), he was kept in a cell with a single narrow potentially-dangerous slit for viewing, he was exposed to uncomfortably hot and cold conditions, he was not provided with shower facilities which would accommodate his wheelchair, and he was not allowed to exercise.  In late December, 2004, he was apparently discharged from the hospital ward, but he complains that he was thereafter placed in a "strip cell" on January 27, 2005, for unspecified reasons and, while there, had his religious, personal and medical property taken from him for a period of two weeks.  Finally, he was assigned to the prison's general population in early 2005, and he complains of unhygienic conditions at that location because the restrooms are rarely and improperly cleaned, and he is required to live in close proximity to numerous inmates, some of whom allegedly suffer with communicable illnesses.

In the Court's view, these claims do not rise to the level of a constitutional violation.  In the first place, the classification of prisoners is a matter left to the sound discretion of prison officials

employed by the Louisiana Department of Corrections, and inmates have no right to a particular classification under state law.  Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983); McGruder v. Phelps, 608 F.2d 1023, 1026 (5th Cir. 1979.)  Prison officials have broad administrative and discretionary authority over the institutions they manage, and lawfully incarcerated persons retain only a narrow range of protected liberty interests.  Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).  So long as the conditions and degree of confinement are within the sentence imposed upon an inmate and do not otherwise violate the constitution, the due process clause does not in itself subject a prison official's treatment of an inmate to judicial oversight.  Hewitt, 459 U.S. 468, 103 S.Ct. at 869.  Where the decision to keep an inmate is reasonably related to legitimate security objectives and was not an exaggerated response to security considerations, there is no denial of due process.  McCord v. Maggio, 910 F.2d 1248 (5th Cir. 1990). Accordingly, the plaintiff has no legitimate complaint with regard to his housing assignments or classification within the prison.

Further, with regard to the plaintiff's complaints regarding the conditions to which he was allegedly subjected in the various housing assignments, the law is clear that the Eighth amendment prohibits only the wanton and unnecessary infliction of pain.  Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Whether the treatment received by an inmate is characterized as inhumane conditions of confinement, a failure to attend to medical needs, or a combination of both, it is appropriate to apply the "deliberate indifference" standard articulated in Estelle.  Wilson v. Seiter,

13

501 U.S. 294, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). Whereas some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, this occurs only when the conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need.   Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.   <u>Id</u>.

In the instant case, all that the plaintiff alleges is that (1) for a relatively brief period of time between his arrival at LSP in September, 2004, and his discharge from the Hospital Ward in December, 2004, (2) for a relatively brief period of time in segregated confinement in January and February, 2005, and (3) thereafter upon transfer to the general prison population, he suffered deprivations which ultimately, in the Court's view, did not amount to a deprivation of a single identifiable human need.  Specifically, by his own admissions, it appears that certain alleged deprivations to which he was subjected, such as a disallowance of exercise and a cell with only a narrow slit for viewing in 2004, were the result of his being housed in an isolation cell designed to protect co-inmates and security officers from the possibility of contagion.  Moreover, and more importantly, with regard to these and the plaintiff's myriad other alleged deprivations, such as alleged discomfort resulting from temperatures which were either too hot or too cold, alleged hunger resulting from his unilateral decision not to eat food which he believed to be unhygienic or cold, and alleged exposure to unhygienic living conditions in a prison setting where some co-inmates

suffer with communicable disease, he does not allege that he has sustained any injury, illness or harm in fact as a result of these conditions.  In this regard, pursuant to 42 U.S.C. § 1997e(e), the law is clear that, "[n]o Federal civil action may be brought by a prisoner confined in a ... correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Accordingly, in the absence of any allegation of actual injury or any allegation of the deprivation of a single identifiable human need, the plaintiff has failed to allege a claim which amounts to a constitutional violation.  For this reason, the defendants are entitled to dismissal in connection with this claim.

The plaintiff also complains of many instances of threats and verbal abuse by security officials during the period covered by his Complaint, both at the Hospital Ward between September and December, 2004, in the so-called "strip cell" in January and February, 2005, and in the general prison population in mid-2005 and thereafter.  Notwithstanding, the law is clear that, "mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." McFadden v. Lucas, 713 F.2d 143 (5th Cir.), cert. denied, 464 U.S. 998, 104 S.Ct. 499 (1983); Burnette v. Phelps, 621 F.Supp. 1157 (M.D. La. 1985); Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973). Accordingly, the plaintiff's claim relative to such threats and verbal abuse is without merit and must be dismissed.

Similarly, to the extent that the plaintiff's allegations may be interpreted as suggesting that his reputation was damaged because of the allegedly false and defamatory statement made by security officers that he was a "rat", does not state a cognizable claim in this Court.  Injury

15

to reputation, without more, is not a liberty interest protected under the Fourteenth Amendment to the United States Constitution. <u>Paul v. Davis</u>, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); <u>Siegert v. Gilley</u>, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

The plaintiff also complains of the confiscation of his legal, personal and religious property when he was placed in the "strip cell" on January 27, 2005, and that when it was returned on February 8, 2005, some of it was missing or damaged. Notwithstanding, under well-established legal principles, the plaintiff's claim that the defendants have lost, mishandled, or deprived him of his property is not properly before this Court. Random, unauthorized, and even intentional actions by state officials which result in deprivations of property do not violate the federal Constitution if an adequate post-deprivation state remedy exists. <u>Parratt v. Taylor</u>, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); <u>Hudson v. Palmer</u>, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 383 (1984). It is clear that the State of Louisiana provides ample remedies under which the plaintiff could have proceeded against the defendants for recovery of his property or for reimbursement for its loss. <u>Marshall v. Norwood</u>, 741 F.2d 761 (5th Cir. 1984). Accordingly, the plaintiff's claim in this regard is without constitutional merit and should be dismissed.

Finally, the plaintiff complains of the alleged wrongful disciplinary report issued against him by defendant Reginald Smith in May, 2005. The plaintiff asserts that, as a result, he was placed in administrative segregation and, at a subsequent disciplinary board hearing at which he was allegedly denied due process, was ultimately found guilty of the referenced offense. This claim also fails to rise

16

to the level of a constitutional violation.  In this regard, under § 1983, the law is clear that a mere allegation that an inmate plaintiff has been reported or punished for an act which he did not commit does not amount to a constitutional offense.  Collins v. King, 743 F.2d 248 (5th Cir. 1984).  Moreover, although the plaintiff asserts that he was denied due process at resulting disciplinary board proceedings, the decision of the United States Supreme Court in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), makes clear that inmates possess only a very narrow protected liberty interest in procedures attendant to prison disciplinary proceedings where the punishment imposed does not result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id.  In Sandin, the Court addressed a disciplinary sentence of a transfer to segregated confinement.  Inasmuch as the Court there found that this sentence did not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," this Court similarly finds that the plaintiff's disciplinary proceedings in the instant case may not be seen to invoke any protected liberty interest in which the plaintiff may claim protection.  See Orellana v. Kyle, 65 F.3d 29 (5th Cir. 1995)("After Sandin, .... it is difficult to see that any ... deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status").  Accordingly, the plaintiff's claim that he was unfairly charged and punished on the basis of one or more wrongful disciplinary reports and unfair disciplinary board hearings does not rise to the level of a constitutional violation and must be dismissed.

17

Notwithstanding the foregoing, The plaintiff also complains, that the referenced disciplinary report was issued in retaliation for his exercise of First Amendment rights. Specifically, he contends that this report was issued in response to the plaintiff's administrative grievances filed against security officers. In this regard, although the issuance of a false disciplinary report alone is not a constitutional violation, the issuance of a false disciplinary report in retaliation for an inmate's exercise of constitutional rights may become so. In other words, prison officials are not allowed to retaliate against or harass an inmate because of the inmate's exercise of his First Amendment right to seek access to the courts. Ruiz v. Estelle, 679 F.2d 1115 (5th Cir.), opinion amended in part and vacated in part, 688 F.2d 266 (1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); Gibbs v. King, 779 F.2d 1040 (5th Cir.), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986). Similarly, a prison guard may not harass an inmate in retaliation for the inmate complaining to supervisors about the guard's wrongful conduct. Ruiz v. Estelle, supra; Gibbs v. King, supra. It is the plaintiff's burden, however, to assert more than mere conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

Woods v. Smith, 60 F.3d. 1161 (5th Cir. 1995), cert. denied, sub nom, Palermo v. Woods, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

In this case, the plaintiff asserts in his Complaint that, when issuing the referenced disciplinary report which he contends was retaliatory, defendant Smith told him specifically that the disciplinary

18

report was being issued directly in response to the plaintiff's administrative grievances filed against security officers. Based upon this non-conclusory factual assertion, the Court concludes that the plaintiff has stated, at least at this stage of the proceedings, a non-frivolous claim of retaliation which merits further development by the parties.[3]

RECOMMENDATION

It is the recommendation of the Magistrate Judge that the plaintiff's claims against defendants Dr. John Doe, Nurse Vona, Nurse Chuck, Nurse Farrow, Major Myers, Lt. Skiels, Akisha Lewis, Sgt. Ernest and Officer Williams be dismissed for failure of the plaintiff to serve these defendants within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure. It is the further recommendation of the Magistrate Judge that the defendants' Motions to Dismiss, rec.doc.nos. 53 and 69, be granted in part and denied in part such that all of the plaintiff's claims be dismissed, with prejudice, EXCEPT his claim that defendant Reginald Smith charged the plaintiff with a retaliatory

---

[3]    The plaintiff makes numerous additional assertions of retaliatory intent relative to all aspects of his Complaint. However, these assertions are entirely conclusory, are not supported by factually specific allegations of participation by named defendants, and fail to provide any "chronology of events from which retaliation may plausibly be inferred".

disciplinary report in May, 2005, and that this action be referred back to the Magistrate Judge for further proceedings.

Signed in chambers in Baton Rouge, Louisiana, January 31, 2008.


_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**